MICHAEL R. LITTLE, et al.,      :
                                :
          Plaintiffs            :      No. 1:14-CV-00953
                                :
     vs.                        :      (Judge Kane)
                                :
B. MOTTERN, et al.,             :
                                :
          Defendants            :

## MEMORANDUM

### I.   Background

On May 19, 2014, Plaintiffs Michael R. Little and Kareem H. Milhouse, inmates confined at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"), filed the instant civil rights action pro se pursuant to 28 U.S.C. § 1331, the Federal Tort Claims Act ("FTCA"), and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[1]  The same day

---

1.  28 U.S.C. § 1331 states as follows: "The district court shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States."

The FTCA provides a remedy in damages for the simple negligence of employees of the United States to protect federal inmates. United States v. Muniz, 374 U.S. 150, 150 (1963).  In presenting a FTCA claim, a plaintiff must show:  (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd 306 F.2d 713 (3d Cir. 1962), cert. denied, 371 U.S. 923 (1962).  As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency.

Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the

(continued...)

the court issued its Standing Practice Order which advised Little and Milhouse, inter alia, of their briefing obligations under the Local Rules of Court. (Doc. Nos. 5, 6)  Attached to the Standing Practice Order were copies of the pertinent Local Rules. Plaintiff Little was authorized to proceed with this case under the _in forma pauperis_ provision of the Prison Litigation Reform Act ("PLRA")[2] and Defendants enumerated herein waived service of the complaint.

Plaintiff Milhouse was terminated from this action on October 7, 2014, because he had three prior actions dismissed under 28 U.S.C. § 1915(e)(2), and he could only proceed without paying the full filing if he was under imminent danger of serious physical injury. (Doc. No. 38.)  By memorandum and separate order of September 2, 2015, the court determined that Milhouse was not under imminent danger of serious physical injury at the time he filed his complaint and dismissed Milhouse's claims for failure to pay the filing fee. (Doc. Nos. 116, 117.)  Milhouse filed a motion

---

1.  (...continued)
responsible federal official." _Butz v. Economou_, 438 U.S. 478, 504 (1978).

2.  Because Plaintiffs' complaint pertains to "prison conditions," the screening provisions,  28 U.S.C. § 1915(e)(2), of the PLRA apply, given that Plaintiffs are prisoners proceeding _in forma pauperis_.  The court has an obligation to dismiss a complaint or any part thereof under the PLRA screening provisions "at any time the court determines" the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from suit. _See, e.g._, _Lopez v. Smith_, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000); 28 U.S.C. § 1915(e)(2)(B).

for reconsideration under Rule 60 of the Federal Rules of Civil Procedure. Milhouse claimed that he did not have three strikes at the time he filed this action.[3] By order of April 26, 2016, the court granted Milhouse's Rule 60 motion. (Doc. No. 161.) The court also denied without prejudice a pending motion to dismiss and/or for summary judgment (Doc. No. 120) which only addressed Little's claims. (Id.) The court indicated that the Defendants could refile within 60 days a motion which addressed both the claims of Little and Milhouse. (Id.) On June 28, 2016, the court extended the deadline for filing such a motion to July 11, 2016.[4]

The action is proceeding on the basis of a third amended complaint filed by Little and Milhouse on September 2, 2014, raising claims under Bivens and the FTCA. (Doc. No. 35.) The third amended complaint is handwritten in a small, rambling, single-spaced script. (Id.) The third amended complaint focuses on three groups of defendants. (Id.) It also primarily focuses on two periods of time. (Id.) The allegations in the third amended complaint are disjointed. The court will first list the

---

3.  Although Milhouse only had one strike at the time he filed this action, after June, 2014, Milhouse accumulated two additional strikes: Milhouse v. Heath, Civil No. 15-00468 (M.D.Pa. filed Mar. 9, 2015); and Milhouse v. John Doe 1-3, Judges of the Third Circuit Court of Appeals, Civil No. 16-146 (M.D. Pa. filed Jan. 27, 2016).

4.  The discovery deadline under the Local Rules expired on March 2, 2015, six-months from the filing of the third amended complaint. M.D.Pa. Local Rule 26.4. After the court reinstated Milhouse as a party in this action, he did not seek an extension of the discovery deadline.

defendants and then set forth the allegations in a chronological
and coherent manner.

The first group of defendants was allegedly involved in
incidents which occurred during May through August, 2014, and
consists of the following individuals employed at USP-Lewisburg:
(1) Brandon Mottern, Correctional Officer; (2) Hamsa Boussag,
Correctional Officer; (3) Jerald Loyek, Correctional Officer; (4)
Jeffrey Butler, Associate Warden; (5) J.E. Thomas, Warden; (6)
James Eck, Correctional Officer; (7) Daniel Dowkus, Lieutenant;
(8) James Diltz, Correctional Counselor; (9) Suzanna Heath,
Special Investigations Agent; (10) Frederick Entzel, Captain; and
(11) Brent Taggart, Deputy Captain.  (<u>Id.</u> at 1.)

The second group of defendants consists of the following
individuals employed at the United States Penitentiary at
McCreary, Pine Knot, Kentucky ("USP-McCreary"): (1) J.C. Holland,
Warden; (2) Angela Hubbard, Correctional Officer; and (3) Trinity
Middleton, Correctional Officer. (<u>Id.</u>)

The third group of defendants consists of the United
States and the Federal Bureau of Prisons. (<u>Id.</u>) The third amended
complaint does not set forth any allegations specifically directed
at the United States or the Federal Bureau of Prisons.  The
apparent basis for naming the United States is that it is
allegedly liable under the FTCA for wrongful acts committed by
prison staff at USP-Lewisburg and USP-McCreary.  However, the
court will summarily dismiss the case as it relates to the Federal

Bureau of Prisons because claims against a federal agency are not cognizable under the FTCA or <u>Bivens</u>. <u>FDIC v. Meyer</u>, 510 U.S. 471, 473 (1994); <u>Dambach v. United States</u>, 211 F. App'x 105, 108 (3d Cir. Dec. 19, 2006); 28 U.S.C. § 2679(a).

With respect to the first group, it is alleged in the third amended complaint that on May 7, 2014, when Defendant Diltz was performing rounds at approximately 1:15 p.m. on the cell block where Little was housed, Little asked him for an administrative remedy form (BP-8) but Diltz denied the request. (<u>Id.</u> at 5.) The next day, May 8, 2014, at approximately 5:05 p.m., Defendants Mottern, Boussag and Loyek came to the cell shared by Milhouse and Little, and Mottern ordered them to "cuff up cock sucking rat bastards . . . yeah I read y'all files." (<u>Id.</u> at 2.) Plaintiffs allege that Boussag then stated "Hurry Rats today" (Id. at 2, 4) and Loyek also stated: "Y'all can't hide here with all that snitching. This Lewisburg. This ain't SHU. Y'all at the Big House." (<u>Id.</u> at 3.) Milhouse and Little claim that the statements were "loudly [stated] on [the cell] tier and other inmates heard" the statements and as a result other inmates began threatening them and spreading the information to inmates in other cell blocks. (<u>Id.</u> at 1.)

Milhouse claims that after he was removed from his cell on May 8, 2014, that Mottern while escorting him to a shower stated: "Do something guy. I'll fuck you up." (<u>Id.</u> at 2.) As they approached the shower Milhouse claims Mottern pushed him

inside and stated: "I'll roll you like a turd. . . This is a new
program with new lieutenants and new procedures . . . we don't
bullshit." (Id.)  Milhouse claims that Mottern locked the shower
and left but after 15 minutes returned with Boussag at which time
Milhouse states he was placed in paper clothes and then
handcuffed. (Id.)  Milhouse alleges that Boussag then "became
overly aggressive and belligerent" and stated "Fuck you, the
courts and your lawyer mother." (Id.)  As the shower door was
opened, Milhouse claims that Boussag grabbed his penis and
testicles and stated: "I molest fagots like you little dick
motherfucker." (Id.)  Milhouse then claims he was slammed to the
floor by Mottern and Boussag, and Mottern sat on his back while
Boussag "stuck an object inside [his] rectum, and stated "cum now
motherfucker." (Id.)  Milhouse then alleges that Mottern
subsequently "fabricated [an] incident report which was
expunged[.]" (Id.)

Little claims that when he was removed from the cell on
May 8, 2014, he was escorted to the shower area and Boussag patted
him down and squeezed his private parts and "boasted how [the]
government trained him, he got big guns (sic) and if he catch
(sic) Plaintiff(s) in Pennsylvania he'll kill them." (Id. at 4.)

After the incident of May 8, 2014, Plaintiffs allege
that they requested grievance forms from prison staff and
apparently attempted to file grievances. (Id. at 4-5.) The court
will subsequently review the alleged attempts by Plaintiffs to

6

file grievances after completing a review of their allegations regarding being labeled as informants, verbal threats and being assaulted physically. The court will, however, review at this point attempts at filing grievances where there were alleged attempts by prison official to discourage such filing.

Little claims that on May 14, 2014, he submitted sensitive administrative remedy forms to the Regional Office[5] regarding the incident of May 8, 2014, but that those forms were destroyed by Defendant Diltz. (Id. at 4-5.)

Little alleges that on May 15, 2014, he requested a administrative remedy form from Defendant Diltz who was performing rounds on the cell block where he was housed. (Id.) Little alleges he needed the form to grieve incidents which occurred at USP-McCreary and that Diltz denied the request and stated as follows: "Fuck that start new. You not at McCreary no more! . . . You keep fucking filing bullshit on staff!" (Id.) Little claims

_____

5. 28 C.F.R. § 542.14(d) permits an inmate if he "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the [Administrative Remedy] Request became know at the institution, the inmate may submit the Request directly to the appropriate Regional Director." However, this provision further provides that "[t]he inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such resubmission."

that Diltz destroyed an administrative remedy form relating to the May 8, 2014, incident and that his refusal to provide him with an administrative remedy form was retaliatory in order to prevent him from filing a civil complaint. (<u>Id.</u>)

Plaintiffs allege that (1) on May 18, 2014, at approximately 9:30 p.m., Defendant Eck came to their cell and stated as follows: "Y'all keep fucking telling the warden on my coworkers sooner or later that shit gonna catch up to y'all!" (<u>Id.</u> at 4) and (2) on May 19, 2014, Boussag approached their cell and stated that it was their fault because they disrespected his coworkers and further stated as follows:

> So we just reacted and now your telling the fucking warden, Region Director and Office of Inspector General. That don't mean shit. I gonna make you so miserable that your (sic) going to kill yourself. Your (sic) suicidal. I will fuck with your food, your mail won't go out. You won't get the phone. I know inmates is (sic) after you and I heard them threaten you, because your (sic) a fucking rat. Sooner or later y'all will be in the very same rec[reation] cage[.]"

(<u>Id.</u> at 2-3.)

Little alleges that on May 20, 2014, he requested an administrative remedy form from Defendant Diltz who was performing rounds on the cell block where he was housed. (<u>Id.</u> at 5.) Little alleges Diltz denied the request and stated as follows: "I ain't giving you shit "Boy" to file on staff! Fuck your safety! Stop bitching!" (<u>Id.</u>) Little further claims that Diltz refused to let him file for protective custody "due to the rat label[.]" (<u>Id.</u>)

8

Little claims that on May 21, 2014, that he reported to Defendant Heath the alleged misconduct of staff and the taunts and threats he "gets from inmates" as the result of being labeled a snitch. (Id. at 5-6.) Little claims that Defendant Dowkus was eavesdropping on that conversation and that subsequently Dowkus approached Plaintiff Milhouse and stated as follows: "Find yourself another cellmate. I'm moving Little." (Id. at 6.) Little then alleges that he was confronted by Dowkus who told him: "I'm moving you on 3rd floor or general population with other inmates. I know your whole case. [] I been here a long time. I got a lot of pull! You don't know me. You pointing the finger that's not how you get stuff done. Now if you want to start pointing the finger it will be hard." (Id.) Little claims Dowkus was threatening to put him in a situation where he would be harmed because of he reported alleged staff misconduct. (Id.)

Little claims that on May 23, 2014, he was approached by Defendant Boussag who told him: "Your time is coming."(Id. at 3.)

Little alleges that on May 30, 2014, he requested an administrative remedy (BP-8) form from Defendant Diltz who was performing rounds on the cell block where he was housed. (Id. at 5.) Little alleges Diltz denied the request and stated as follows: "Nigger! I ain't giving you shit to file on staff!" (Id.) Little alleges that subsequent to that statement a counselor by the name of, J. Yayda, who is not named as a defendant, arrived at his cell door at which time Little alleges he asked counselor

Yayda for an administrative remedy form (BP-8) because Diltz would not give him one. (Id.) Little alleges that Yayda told him "that's between you two" and  Diltz subsequently asked Yayda "Is Little still rat bitching?" (Id.)  Little claims that as a result of referring to him as a "rat" he received taunts and threats from other inmates. (Id.)

Little alleges that on June 5, 2014, he requested an administrative remedy form from Diltz but the request was denied and Diltz stated "I ain't giving you shit to file on!" (Id.) Little then alleges that a correctional officer by the name of Klusner, who is not named as a defendant, "tried to coerce [him] not to make more attempts to get [administrative remedy forms] to file on Lewisburg staff" for the incident of May 8, 2014. (Id.) Little alleges that Klusner stated that Little had "pissed a lot of people off coming here, that's why Diltz [refused] to give [him administrative remedy forms]." (Id.)  Little further claims that Klusner told him "just lay down and let this stuff go." (Id.)

Little claims that on June 20, 2014, he was placed in a recreation cage with other inmates and assaulted by those inmates and that Defendant Boussag paid the inmates to assault him. (Id. at 4.) Little also alleges that on the same day Boussag escorted him to the basement for a haircut and during that encounter Boussag stated: "Yeah you got your ass whooped I told you and Milhouse that I will have your enemies put inside your

rec[reation] cage. Milhouse lucky he didn't go out. Its (sic) more days his turn coming. (sic) Its (sic) far from over." (Id.)

Little alleges that on June 23, 2014, he gave Diltz a administrative remedy form (BP-8) relating to the sensitive administrative remedy forms he submitted on May 14, 2014. (Id. at 5.) Little also claims that on July 2, 2014, he gave Diltz a administrative remedy form (BP-8) relating to the June 20, 2014, assault. (Id.) Little claims he did not receive a reply with respect to either the June 23 or the July 2, 2014, administrative remedy forms, and that on July 15, 2014, he asked Diltz why he had not received a reply and Diltz "confessed to destroying [the administrative remedy forms]." (Id.)

The final allegation relating to assaultive behavior relates to an incident which occurred on August 23, 2014. (Id. at 2.) On that date at approximately 5:30 p.m., it is alleged that Correctional Officer Hagenbunch, who is not named as a defendant, approached Milhouse's cell and told Milhouse and his cellmate[6] to submit to hand restraints. (Id.) Milhouse was then escorted to the shower area at which point it is alleged that Boussag punched Milhouse on the left side of his face and "mashed his face into the shower stall gate, which caused a split over top his left eye that bleed (sic) profusely." (Id.) After being returned to his cell Milhouse claims he requested medical attention but a correctional officer, who is not named as a defendant, denied the

---

6. The name of the cellmate is not given.

request and stated as follows: "I'm not calling medical so you can get an assessment. I know how you make accusations in that shower." (Id.)

The court will now address the allegations by Plaintiffs against Defendants who were not involved in the incidents where Plaintiffs allegedly were labeled as informants, received verbal threats and were assaulted physically.

Plaintiffs state that they sent requests to Warden Thomas and Associate Warden Butler on May 8, 19 and 20, 2014, but they did not respond to their requests. (Id. at 3.) There are no allegations that Warden Thomas or Associate Warden Butler were involved in any of the alleged incidents of labeling Plaintiffs as informants, verbal threats or assaultive behavior. (Id.)

Plaintiffs claim Defendant Heath "was well aware of threats of bodily harm/snitch taunts to (Little) notifying Heath in many request to staff via prison mail, verbally in initial screening 4-28-14/5-21-14 in quay" and "Heath failed to reply/protect plaintiff." (Id. at 4.) Likewise, Plaintiffs in a conclusory manner claim that Defendants Entzel and Taggart were well aware of the incidents. (Id.)

With respect to the second group of defendants, Little claims that while confined at USP-McCreary that Defendant Hubbard on December 24, 2013, fabricated an incident report. (Id. at 6.) The incident report allegedly charged Little with masturbating when Hubbard was doing rounds and appeared at Little's cell door.

12

(Id.) Little claims that Hubbard asked Defendant Middleton to remove him from the unit but that Little subsequently had the incident report expunged based on a surveillance tap which "prove[d] Hubbard lied[.]" (Id.) Little also appears to allege that Middleton told District Columbia inmates that Little was an informant which resulted in Little being assaulted at USP-McCreary. (Id.)

As relief Plaintiffs request compensatory and punitive damages in the total amount of $120,000,00.00 and the issuance of permanent injunction directing that they not be confined in a federal facility and that defendants be prosecuted.[7] (Id. at 7-8.)

On June 20, 2016, Plaintiff Little filed a motion for summary judgment and on June 27, 2016, a statement of material facts and a supporting brief. (Doc. Nos. 165, 167, 168.) On July 11, 2016, Defendants filed motions to dismiss and/or for summary judgment. (Doc. Nos. 174, 175.) Supporting briefs, statements of material facts and evidentiary materials were filed by Defendants on July 25, 2016. (Doc. Nos. 178, 179, 180, 181.)[8] On August 10, 2016, the court issued an order granting a motion for extension of time filed by Defendants. (Doc. No. 185.) The order provided that

---

7. The court has no authority to direct that the Plaintiffs be housed in a non-federal facility or that the Defendants be prosecuted. Consequently, those claims for injunctive relief will be summarily dismissed.

8. The evidentiary materials included declarations under penalty of perjury from Defendants Diltz, Holland, Hubbard, Middleton

13

Defendants would have fourteen (14) days from the date the court decided Defendants' motions to dismiss and/or for summary judgment to respond to Plaintiff Little's motion for summary judgment. (Id.) On August 12, 2016, Plaintiff Little filed a brief in opposition to Defendants' motion to dismiss and/or for summary judgment. (Doc. No. 186.) Little's brief consists of two pages and does not respond to Defendants' arguments. (Id.) Little also did not respond to Defendants' statement of material facts or present any evidentiary materials in opposition to those submitted by Defendants. On August 29, 2016, Defendants filed a reply brief (Doc. No. 194) with respect to Little's brief in opposition.

On August 15, 2016, Plaintiff Milhouse filed a motion for summary judgment and a supporting brief. (Doc. Nos. 189, 190.) Milhouse did not file a statement of material facts in support of his motion or any evidentiary materials. On September 1, 2016, Defendants filed a brief in opposition to Plaintiff Milhouse's motion for summary judgment. (Doc. No. 195.) Plaintiff Milhouse did not file a reply brief. Consequently, Defendants' motions to dismiss and/or for summary judgment and Plaintiff's Milhouse's cross-motion for summary judgment are ripe for disposition.[9]

---

9. The third amended complaint is not executed as an unsworn declaration "under penalty of perjury" in accordance with 28 U.S.C. § 1746 and cannot be considered as evidence in opposition to Defendants' motions for summary judgment. Three Rivers Confections, LLC v. Warman, – F. App'x – , 2016 WL 5335025 at *2 n.8 (3d Cir. Sept. 23, 2016); Hatcher v. SCM Group North America, Inc., 167 F.Supp.3d 719, 729 (E.D. Pa. 2016); Crouse v. South Lebanon Township, 668 F.Supp.2d 664, 669 n.5 (M.D.Pa. Oct. 22,

(continued...)

The Defendants filed a motion to dismiss and/or for summary judgment with respect to Little's claims (Doc. No. 174) which became ripe on August 29, 2016, and a second such motion (Doc. No. 175) with respect to Milhouse's claims which became ripe on August 17, 2016.

With respect to Little's claims, Defendants argue that the court should dismiss his claims or in the alternative grant summary judgment in their favor for the following reasons: (1) Little filed the complaint in this action on May 19, 2014, only eleven days after the incidents involving the USP-Lewisburg Defendant occurred, and consequently, he failed to exhaust administrative remedies concerning his civil rights claims; (2) Little filed no administrative tort claims concerning his claims under the Federal Tort Claims Act before he commenced this lawsuit; and (3) this court lacks personal jurisdiction over Defendants Holland, Hubbard, and Middleton.  As stated above in support of the motion with respect to Little's claims, Defendants filed a statement of material facts in accordance with Local Rule 56.1.  That rule provides as follows:

> A motion for summary judgment filed pursuant to
> Fed.R.Civ.P. 56, shall be accompanied by a separate,
> short and concise statement of the material facts,
> in numbered paragraphs, as to which the moving party
> contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment

---

9.  (...continued)
2009); <u>Kamuck v. Shell Energy Holding GP, LLC.</u>, 2015 WL 1345235, at *15 (M.D.Pa. Mar. 25, 2015).

shall include a separate, short and concise statement
of the material facts, responding to the numbered
paragraph set forth in the statement required in the
foregoing paragraph; as to which it is contended that
there exists a genuine issue to be tried.

Statement of material facts in support of, or in
opposition to, a motion shall include references to
the parts of the record that support the statements.

All material facts set forth in the statement
required to be served by the moving party will be deemed
to be admitted unless controverted by the statement
required to be served by the opposing party.

M.D. Pa. LR 56.1 (emphasis added). A standard practice order was
issued on May 19, 2014, which advised Little and Milhouse of the
requirements of several Local Rules of Court, including Local Rule
56.1. (Doc. Nos. 5, 6.) Little did not respond to Defendants'
statement of material facts in accordance with Local Rule 56.1.

As for Milhouse's claims, Defendants as stated filed a
motion to dismiss and/or for summary judgment along with a
statement of material facts. Milhouse did not file a brief in
opposition or a response to Defendants' statement of material
facts. Defendants argue that the court should dismiss Milhouse's
claims or in the alternative grant summary judgment in their favor
for the following reasons: (1) Milhouse failed to exhaust
administrative remedies with respect to his claims under <u>Bivens</u>;
and (2) with respect to the claims under the FTCA Milhouse failed
to exhaust the administrative tort claim procedure before he filed
this lawsuit.

For the reasons set forth below the motion to dismiss
Little's claims against Defendants Holland, Hubbard and Middleton

for lack of personal jurisdiction will be granted, and summary judgment with respect to the claims of Little and Milhouse will be granted in favor of the United States and Defendants Mottern, Boussag, Loyek, Butler, Thomas, Eck, Dowkus, Diltz, Heath, Entzel, and Taggart. Furthermore, the motions for summary judgment filed by Milhouse and Little will be denied.

## II.     Motion to Dismiss

Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662,___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough,

17

Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). In ruling on a motion to dismiss under Rule 12(b)(2), the court is required, as with Rule 12(b)(6) motions, to accept as true all allegations contained in the complaint and view all factual disputes in plaintiff's favor. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). However, the scope of the Court's review on a Rule 12(b)(2) motion is not limited to the face of the complaint, but may include affidavits and other competent evidence submitted by the parties. Patterson v. FBI, 893 F.2d 595, 603-604 (3d Cir. 1990). The plaintiff, ultimately, bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish

personal jurisdiction over the defendants. <u>Metcalfe v. Renaissance</u> <u>Marine, Inc.</u>, 566 F.3d 324, 330 (3d Cir. 2009).

**III.    <u>Summary Judgment</u>**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty</u> <u>Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; <u>Gray v.</u> <u>York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United</u> <u>Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail Corporation</u>,

963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## IV.   Statements of Material Facts

Defendants' statements of material facts are undisputed as well as supported by ample evidentiary materials and the court incorporates those statements herein by reference. (Doc. Nos. 178, 180.)  In condensed form those statements reveal the following:

(1) the Bureau of Prisons has established an administrative remedy procedure with respect to inmate complaints which is found at 28 C.F.R. § 542.10 et seq.;

(2) the Bureau of Prisons maintains a database of all formal administrative remedy submissions where each administrative remedy is given an identification number upon submission and the database, among other things, indicates when it was received, the nature of the complaint, and the institution at which the complaint originated;[10]

(3) inmates are to first present their complaints to staff in an attempt to informally resolve the matter, which is accomplished by obtaining and completing an informal administrative remedy form (BP-8);

(4) informal resolution (BP-8) forms are separate and distinct from an inmate request to staff, also know as a "copout";

---

10.  See Declaration of Jennifer Knepper, attached to Statement of Material Facts as to Plaintiff Michael R. Little. (Doc. No. 178.)

(5) the BP-8 forms are obtained from the inmate's Unit Team, generally the Correctional Counselor of the Unit;

(6) if informal resolution is unsuccessful, the inmate then files a formal request with the Warden within twenty (20) days of the events giving rise to the complaint;

(7) the Warden has twenty (20) days to respond to the inmate's formal complaint;

(8) if an inmate is dissatisfied with the Warden's response, he may then appeal to the Regional Director;

(9) if dissatisfied with the Regional Director's response, the inmate may then appeal to the Central Office of the Bureau of Prisons which is the final administrative appeal;

(10) if a remedy is rejected at any level, it is returned to the inmate with a written notice explaining the reasons for the rejection;

(11) an inmate has not exhausted his administrative remedies until the complaint has been denied at all levels of the process prior to filing suit;

(12) Little is serving a life sentence imposed by the District of Columbia Superior Court on July 6, 2001, for second degree murder, possession of a firearm during a crime of violence, and attempted voluntary manslaughter;

(13) Little has filed 685 administrative remedies during his incarceration with the Bureau of Prisons;

(14) since his arrival at USP-Lewisburg Little has filed 101 administrative remedies;

(15) Little filed 12 of those remedies between December 24, 2013 and May 19, 2014, the date he filed the present action;

(16) with respect to the 12 administrative remedies filed at USP-Lewisburg, eleven of those remedies were submitted only at the institutional level, and therefore were not exhausted pursuant to regulations of the Bureau of Prisons;

(17) none of the administrative remedies Little filed between December 24, 2013 and May 19, 2014, received a response from the Central Office before he filed the complaint on May 19, 2014;

(18) the claims against the USP-Lewisburg defendants occurred on May 8, 2014, approximately eleven days before Plaintiffs filed their initial complaint on May 19, 2014, and therefore, it would have been impossible for Little to have exhausted his claims during those eleven days given the time allowed inmates to appeal administrative remedies and the time permitted the Bureau of Prisons to respond to them as set forth above;

(19) Defendant Diltz is employed by the Bureau of Prisons as a Correctional Counselor at USP-Lewisburg;

(20) administrative remedy forms are primarily distributed by Correctional Counselors, but may be obtained from any member of the inmate's Unit Team;

(21) inmates can return completed administrative remedy forms to any member of the Unit Team;

(22) when Diltz received a request for a BP-8, he writes the inmate's name on the form as well as the date on which he provided the form to the inmate and when a completed BP-8 is returned by the inmate Diltz assigns it a number, notes in his log book the date on which the inmate returned the form to him, and forwards it to the appropriate department;

(23) once the appropriate department responds to the BP-8, he provides the response to the inmate and notes the date in his log;

(24) the portion of Diltz's log book that covers the period of time between April 29, 2014, and May 19, 2014, indicates that he provided Little with a BP-8 form on May 7, 2014, which was recorded as Informal Resolution Attempt #G37-14;

(25) that informal resolution attempt pertained to a nurse "screaming" Little's name on the range on April 28, 2014;

(26) Little's Informal Resolution Attempt #G37-14 stated that inmates were made aware via "kite" prior to his arrival at USP-Lewisburg that he was a "rat/snitch" and those inmates recognized his name constituting a danger to his safety;

(27) a response to the Informal Resolution Attempt #G37-14 was provided to Little on May 28, 2014;

(28) the Bureau of Prisons maintains a computerized database of all administrative tort claims filed under the FTCA, dating from October 2007 to the present;

(29) Little has filed 22 administrative tort claims while in the custody of the Bureau of Prisons;

(30) Little filed no administrative tort claims between July 6, 2010, and June 23, 2014;[11]

(31) Little has filed fifteen tort claims since June 23, 2014;[12]

(32) Little filed no administrative tort claims concerning the events in the instant lawsuit before he filed the complaint;

---

11. The administrative tort claims are submitted initially to the Regional Office of the Bureau of Prisons. Little submitted no evidentiary material indicating that he submitted any administrative tort claims under the FTCA.

12. Little submitted no evidentiary materials indicating that the administrative tort claims filed after June 23, 2014, related to any of the allegations in the third amended complaint.

(33) Defendants Holland, Hubbard and Middleton have no work or business connection with the Commonwealth of Pennsylvania and they do not reside in the Commonwealth of Pennsylvania;

(34) Milhouse is serving a sentence of 894 months imposed by the United States District for the Eastern District of Pennsylvania on December 3, 2007, for bank robbery and related charges and a separate sentence of 300 months imposed by the same court on February 15, 2008, for sexual assault, escape, and possession of a dangerous weapon relating to an incident that occurred at the Federal Detention Center in Philadelphia;

(35) Milhouse has filed 1143 administrative remedies during his incarceration with the Bureau of Prisons;

(36) since his arrival at USP-Lewisburg on April 28, 2014, to the present, Milhouse has filed 141 administrative remedies;

(37) Milhouse filed 4 of those remedies between April 28, 2014, and May 19, 2014;

(38) Milhouse did not exhaust any of those administrative remedies before filing the present action;

(39) Milhouse has filed 76 administrative tort claims while in the custody of the Bureau of Prisons;

(40) Milhouse filed an administrative tort claim on April 1, 2014, for a personal injury occurring at the United States Penitentiary at Hazelton, a facility in West Virginia; and

(41) Milhouse did not file a tort claim again until June 12, 2014, and as such Milhouse did not file, let alone exhaust, any administrative tort claims concerning the events in the instant lawsuit prior to filing his complaint.

## V.   <u>Discussion</u>

### A. Personal Involvement of Defendants Thomas, Butler, Heath, Entzel and Taggart.

As noted previously, the court has an obligation under the PLRA to dismiss claims at anytime it becomes apparent that the claims are not viable.  A person seeking to recover damages under <u>Bivens</u> must satisfy three requirements; he must: (1) assert that a constitutionally protected right has been violated; (2) state a cause of action sufficient to invoke the general federal question jurisdiction of the district court; and (3) demonstrate why money damages are the appropriate form of relief.  See <u>Muhammad v. Carlson</u>, 739 F.2d 122, 123-4 (3d Cir. 1984).

Moreover, in addressing whether a viable claim has been stated against a defendant the court must assess whether a plaintiff has sufficiently alleged personal involvement of the defendant in the acts which he claims violated his rights.

Liability may not be imposed under <u>Bivens</u> on the traditional standards of <u>respondeat superior</u>. <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 (3d Cir. 1989)(citing <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1017, 1082 (3d Cir. 1976)).  In <u>Capone</u>, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7.

     With respect to Defendants Thomas, Butler, Heath, Entzel and Taggart the allegations set forth in the third amended complaint are clearly insufficient.  Their only involvement was with respect to the handling of grievances and requests of Little and Milhouse.  Such involvement is insufficient as a matter of law to render those defendants liable.  "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." <u>Rauso v. Vaughn</u>, Civil No. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). <u>See also Overholt v. Unibase Data Entry, Inc.</u>, 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); <u>Mitchell v. Keane</u>, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("it appears from the

submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); <u>Caldwell v. Beard</u>, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd,--- F. App'x ----, 2009 WL 1111545 (3d Cir. April 27, 2009); <u>Caldwell v. Hall</u>, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); <u>Orrs v. Comings</u>, Civil No. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); <u>Jefferson v. Wolfe</u>, Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. <u>See</u> <u>Watkins v. Horn</u>, 1997 WL 566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)"). Consequently, the claims against those Defendants will be dismissed for failure to state a

claim upon which relief can be granted without leave to file a fourth amended complaint.[13]

**B.  Personal Jurisdiction.**

The court will now address the issue of whether this court has personal jurisdiction over Defendants Holland, Hubbard, and Middleton.  The Defendants' statement of material facts reveals that Defendants Holland, Hubbard and Middleton at the time of the incidents alleged in the third amended complaint, did not reside, work or have business dealings in Pennsylvania.  They also presently do not reside, work or have business dealings in Pennsylvania.  The assertions relating to having insufficient contact with Pennsylvania are supported by unsworn declarations under penalty of perjury from each of these defendants.  Plaintiff Little did not file any evidence which contradicts the evidence and statements submitted by these Defendants.

When a defendant properly raises a jurisdictional defense, a plaintiff is required to "demonstrate sufficient contacts with the forum state to establish in personam jurisdiction."  North Penn Gas v. Corning Natural Gas, 897 F.2d 687, 689 (3d Cir. 1990).

_____

13.  It would be inequitable and futile to grant Plaintiffs another opportunity to amend. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Furthermore, it is clear as will be elaborated herein that Plaintiffs have failed to exhaust administrative remedies with respect to both the claims under Bivens and the FTCA.

A court's personal jurisdiction over a defendant may be general or specific. Specific jurisdiction is found when a "non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." General Electric Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). General jurisdiction is present when a defendant has "continuous and systematic contacts with the forum state." Id. at 150.

Specific jurisdiction is inapplicable in this case because the allegations at issue directed at Holland, Hubbard and Middleton all relate to their alleged conduct outside of the state of Pennsylvania and that conduct was not directed at Plaintiff Little as a resident of Pennsylvania. The allegations raised against Defendants Holland, Hubbard and Middleton all relate to when Plaintiff Little was housed at USP-McCreary. The only question is whether the court can exercise general jurisdiction over these defendants.

Rule 4(e) of the Federal Rules of Civil Procedure authorizes personal jurisdiction over non-residents to the extent permissible under the laws of the state where the district court sits. Penzoil Products Co. v. Coletti & Associates, Inc., 149 F.3d 197, 200 (3d Cir. 1998). The Pennsylvania long-arm statute states in relevant part:

> [T]he jurisdiction of the tribunal of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based

> on the most minimum contact with this Commonwealth
> allowed under the Constitution of the United States.

42 Pa.C.S.A. § 5322(b). Consequently, the exercise of personal jurisdiction over a non-resident is proper so long as there is no violation of the due process clause of Fourteenth Amendment to the United States Constitution. Penzoil Products Co., supra.

The due process requirements are satisfied when a non-resident has "minimum contacts" with the jurisdiction. See International Shoe Co. v. Washington, 326 U.S. 310 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). The focus of the court's inquiry must be on the activities of the defendant in the forum state. Burger King Corp., 471 U.S. at 474-76. The defendant must have purposefully availed itself of the privilege of conducting business in the forum. Id. The Supreme Court in Burger King held that

> this "purposeful availment" requirement ensures
> that a defendant will not be haled into a jurisdiction
> solely as a result of "random," "fortuitous," or
> "attenuated" contacts, or of the "unilateral activity of
> another party or a third person." Jurisdiction is
> proper, however, where the contacts proximately result
> from actions by the defendant himself that create a
> "substantial connection" with the forum State.   Thus,
> where the defendant "deliberately" has engaged in
> significant activities within a State, or has created
> "continuing obligations" between himself and residents
> of the forum, he manifestly has availed himself of the
> privilege of conducting business there, and because his
> activities are shielded by "the benefit and protections"
> of the forum's laws it is presumptively not unreasonable
> to require him to submit to the burdens of litigation in
> that forum as well.

Id. at 475-76 (internal citations omitted). The important issue is whether the defendant's conduct with and connection to the

particular jurisdiction is such that the defendant would reasonably anticipate being haled into court in the jurisdiction.

In the present case as stated above, Defendants Holland, Hubbard and Middleton have filed declarations indicating that they have insignificant or no contact with the Commonwealth of Pennsylvania. In responding to the brief and statement of material facts, Little did not (1) claim that any of those defendants worked or resided in Pennsylvania or (2) submit any contrary evidentiary materials. Even assuming that these Defendants had input into any decision to transfer Little to USP-Lewisburg that input is insufficient to establish the minimum contacts required under the due process clause. <u>Burger King Corp.</u>, 471 U.S. at 474 ("Although it has been argued that foresee ability of causing injury in another State should be sufficient to establish such contacts there when policy consideration so require, the Court has consistently held that this kind of foresee ability is not a 'sufficient benchmark' for exercising personal jurisdiction."); <u>Trierweiler v. Croxton & Trench Holding Corp.</u>, 90 F.3d 1523, 1534 (10th Cir. 1996)(same); <u>McMillan v. Wiley</u>, 813 F.Supp.2d 1238, 1246 (D.Colo 2011)(the fact that Defendants had input into Plaintiff's transfer to the control unit in Colorado insufficient contact to exercise personal jurisdiction over them);[14] <u>Williams v. Ponder</u>,

---

14. The Colorado long-arm statute is similar to that of Pennsylvania because it confers the maximum jurisdiction permitted by the due process clause.

2009 WL 3152129, at *3 (E.D.Pa. Sept. 30, 2009)("The mere issuance of an arrest warrant that foreseeably caused [Plaintiff] to be arrested in Pennsylvania . . . does not provide sufficient contacts with Pennsylvania for this court to exercise jurisdiction."). Consequently, Plaintiff Little's claims against Defendants Holland, Hubbard and Middleton will be dismissed for lack of personal jurisdiction.

C. **FTCA Claims.**

The United States relying on <u>McNeil v. United States</u>, 508 U.S. 106, 111-112 (1993) argues that FTCA claims of Little and Milhouse should be dismissed because they failed to exhaust their administrative remedies prior to filing the present action. In <u>McNeil</u> the Supreme Court held that a district court does not have jurisdiction over an FTCA claim which was prematurely filed and such claims must be dismissed. The FTCA provides that "[a]n action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). There is a presumptive denial if the agency fails to make a final disposition within six months after the administrative tort claim is filed. <u>Id.</u> The record conclusively established that Little and Milhouse either did not file FTCA claims relating to the allegations set forth in the third amended complaint or assuming they did the third amended

complaint was prematurely filed.[15]  Consequently, Plaintiffs' FTCA

claim cannot be maintained and will be dismissed as premature.

> **D.    _Bivens_ Claims.**

In light of the above the only remaining claims are the

_Bivens_ claims asserted against Defendants Mottern, Boussag, Loyek,

Eck, Dowkus, and Diltz.  These Defendants argue that Little and

Milhouse have failed to exhaust their administrative remedies with

respect to the claim set forth in the third amended complaint.

Under the PLRA exhaustion of administrative remedies is

required for all actions concerning prison conditions brought

under federal law.  See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126

S.Ct. 2378 (2006).  The "exhaustion requirement applies to all

inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  Porter v. Nussle, 534 U.S.

516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001)

("[A]n inmate must exhaust irrespective of the forms of relief

sought and offered through administrative avenues.").  "[I]t is

beyond the power of [any] court ... to excuse compliance with the

exhaustion requirement."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir.

2000).  The PLRA also mandates that inmates "properly" exhaust

---

15.  The earliest alleged wrongful incident in the third amended
complaint filed of record on September 2, 2014, is May 8, 2014.
Assuming that Little filed an administrative tort claim with the
Regional Office on May 9, 2014, the agency had until October 9,
2014, to issue a final decision on that claim.  The third amended
complaint was filed on September 2, 2014, prior to that date.

administrative remedies before filing suit in federal court.
Woodford, 126 S.Ct. at 2387. "Proper exhaustion demands
compliance with an agency's deadlines and other critical
procedural rules because no adjudicative system can function
effectively without imposing some orderly structure on the course
of its proceedings." Id. at 2386. Failure to substantially
comply with procedural requirements of the applicable prison's
grievance system will result in a procedural default of the claim.
Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004). The
Bureau of Prisons' procedural requirements for the exhaustion of
administrative remedies have been outlined above in section IV,
Statements of Material Facts.

Moreover, a prisoner must exhaust administrative
remedies even where the relief sought, such as monetary damages,
cannot be granted by the administrative process. See Booth, 532
U.S. at 734; Nyhuis, 204 F.3d at 73. The PLRA requires exhaustion
of all claims before a complaint is filed. 42 U.S.C. § 1997e(a).
Subsequent exhaustion of administrative remedies or the filing of
an amended complaint does not cure an exhaustion infirmity. See
Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

Based on Defendants' statements of material facts and
the evidentiary materials and the lack of opposing evidentiary
materials, the court concludes that there are no triable issues of
material fact regarding the issue of exhaustion of administrative

remedies and that Defendants Mottern, Boussag, Loyek, Eck, Dowkus, and Diltz are entitled to judgment as a matter of law.

An appropriate order will be entered.